STILES *vs*. THE ATLANTA & WEST POINT RAILROAD.

Where defendant's passenger train was temporarily stopped some dis-
tance from the depot for receiving and delivering passengers until
two freight trains in advance of it could be moved out of the way,
and the plaintiff boarded such train in search of his wife and child,
who were thereon as passengers, and in attempting to move from
one car to another, by passing around an intervening car, stepped
off the platform into a culvert fifteen or twenty feet deep, which he
could not see on account of the darkness of the night, thereby sus-
taining serious personal injury, the company was not liable there-

for, even though the lights in some of the cars had been blown out by drunken and disorderly men. The exercise of ordinary care on the part of the plaintiff would have avoided the injury.

Railroads.    Negligence.    Before Judge BUCHANAN. Troup Superior Court.    May Term, 1880.

Reported in the opinion.

FERRELL & LONGLEY; BIGHAM & WHITAKER, for plaintiff in error.

COX & SPEER, for defendant.

HAWKINS, Justice.

C. A. Stiles brought his action for damages against the defendant, the Atlanta and West Point Railroad Company, in Troup county, on the twenty-seventh day of October, 1879.   He claimed $15,000.00 damages, and alleged in his declaration that on the twenty-second day of August, 1879, at the depot of defendant, in LaGrange, Georgia, in said county, he bought a ticket for his wife and child, only four years old, to be conveyed to the city of Atlanta and return on said day.   He put his wife and child aboard said train, and was then informed by the officers in charge of the same, that said train would return the night following said day, and which did return as stated, with Pierce Mims as the conductor, about twelve o'clock on said night, and instead of pulling up to the usual place of receiving and discharging passengers on the south side of the depot in said city, the train, by order of said conductor, stopped at the north of said depot.   He boarded said train in search of his wife and child, and passing through said car without finding them, passed into the next ladies' car, which was crowded with ladies and children, and in which there was no light. The night was very dark.   Petitioner passed nearly half way through said car, and on inquiry found his wife not

there. To keep off the children, he retraced his steps to go on the next car, not knowing that defendant had stopped its car immediately over an open culvert twenty feet deep. In descending from the steps he fell in the culvert, inflicting serious injuries, etc. He had no knowledge of the existence of the culvert at the time. By reason of said injuries he suffered great pain, was permanently injured, and, as a physician, deprived of the power to pursue his profession.

To this action defendant pleaded not guilty, and that the injury was caused, not by any negligence of the defendant, but by the gross imprudence and negligence of the plaintiff.

A trial resulted in a verdict of one thousand dollars for the plaintiff.

The evidence was, in substance, about as follows:

The defendant advertised an excursion trip to Atlanta on the twenty-second day of August, 1879, and return. The plaintiff bought tickets for his wife and child four years old, and in the morning assisted them on board the excursion train bound for Atlanta. The train consisted of many coaches and a great crowd of passengers. On the return trip the train was much crowded with men, women and children, and many of the men were drunk. The train was delayed on its return, near the depot (some 360 yards) at LaGrange. The night was warm, drizzling and very dark when the train reached a place on its track 360 yards from the depot and platform where passengers were discharged and received. It was stopped by the officer in charge of the train on account of two freight trains in front discharging freights being on the track, thereby preventing further movement of the excursion train until the freight trains were moved. Under the steps of one of the passenger coaches was an open culvert twenty feet deep, constructed and used in the ordinary way by said railroad company. Plaintiff went to the depot to meet his wife and child and be their escort from thence home.

The train was delayed, and finding that the train containing his wife and child was standing in the rear of the freight trains, and they were still delivering freights, being anxious about his wife and child, and seeing many persons coming from said train, he went up the railroad track to where said train was standing, and boarded the train in search of his wife and child, went through one car, then on through another; lights in first car, none in second. Inquired for his wife, and was told she was not in that car; retraced his steps, went down steps of the car, stepped off bottom step and fell into the open culvert fifteen feet deep, receiving severe injuries, etc. Did not go on the excursion; knew where the depot and platform was where passengers were received and discharged; wife and child not hurt; no one hurt on train, and nothing unusual or exciting had occurred.

The evidence also showed that the train on its return was much crowded, many drunken men on board the same, who blew out the lights; the train was provided with lamps and candles; the night was warm, and though all efforts were made to keep the windows down and lights burning, they were constantly blown out by drunken men and the wind.

The evidence also showed that when the train stopped the conductor cried out to passengers, " Don't get out, we are not at the depot yet." One witness said some one said get out, but the plaintiff did not hear that.

After verdict for plaintiff for $1,000.00, a motion was made by the railroad company for a new trial upon the ground that there was no sufficient evidence to support it, and various other grounds.

The judge granted the new trial upon the sole ground that the evidence was not sufficient in law to sustain the verdict, and, therefore, the same was contrary to law, and this is the error complained of by the plaintiff.

It is written in our law that a carrier of passengers is

bound to "extraordinary diligence in behalf of himself and his agents to protect the persons and lives of his passengers." See Code, section 2067.

"Extraordinary diligence is that extreme care and caution which every prudent and thoughtful person uses in securing and preserving their own property." Section 2062.

"A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotive or cars or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that these agents have exercised all ordinary and reasonable care and diligence—the presumption in all cases being against the company." See Code, section 3033.

What constitutes extraordinary diligence and ordinary care are questions of fact, often complicated and involved in intricate and subtle discriminations, determinable alone by the searching analysis of intelligent jurors. Here our law leaves the question under well established rules of law.

But our law does not make a railroad corporation liable for the negligence, want of care, or recklessness of other persons. No one can recover damages from another for an accident or an injury caused by his own negligence.

Code, section 3034, provides that no person shall recover damages from a railroad company for injury to himself, or his property, where the same is done by his consent, or is caused by his own negligence ; and if the complainant and the company be both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to him.

In construing these sections of our Code as enactments *in pari materia*, it would seem that no action can be main-

tained against a railroad company where the plaintiff could have avoided the injury complained of by the exercise of ordinary care, see Code, section 2972, and this would be true although contributory negligence on the part of the company would be an element in the case, that is to say, where the injury complained of was caused by the negligent running of the locomotive or cars of the company. Yet if the plaintiff consented to the same, or was injured by his own negligence, or could have avoided the injury by ordinary care, then he could not recover upon a well settled principle of right and law that no person ought to be mulcted in damages by the fault, negligence or recklessness of another.

In this case it appears that the plaintiff went to the depot at LaGrange to meet his wife and child on the return of the excursion train. Finding the train some three hundred and sixty yards below the depot, he went thither, boarded the train and, in search of his wife, stepped from the cars into the culvert, receiving the injury.

It may be conceived that when at the depot at LaGrange to meet his wife and child, the plaintiff had all the rights of a passenger aboard the train for the purpose of receiving and assisting his wife and child from the train, and any injury received *there* and in the duty or desire of assisting his wife and child from the train, would be redressable at law in the absence of negligence on his part. But when he left the depot and place for delivery of passengers, and went on and up the track of defendant in the dark to meet his wife and child, and whilst the machinery of the defendant was absolutely still and not in motion, and entered the train in search of his wife and child, and while so looking for her stepped from the cars into the culvert, receiving the injury complained of, we cannot see how the defendant can be liable for this apparent accident. His desire to meet and assist his wife and child was praiseworthy, but in no sense could the defendant be charged with responsibility as to his movements in

approaching, entering or leaving its train, then not in motion and only awaiting the removal of the freight trains to deliver the passengers at the depot.

The court below thought the evidence did not authorize the verdict, and we see no abuse of its discretion in granting the new trial.

Judgment affirmed.